IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| JASON TAYLOR, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 09 C 5293 |
| v. | ) | |
| | ) | Judge Virginia M. Kendall |
| AVID HOLDINGS, LLC and | ) | |
| TARGET CORPORATION, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Jason Taylor ("Taylor") filed this product liability action against Defendants Avid Holdings, LLC ("Avid") and Target Corporation (hereinafter "Target"), alleging strict product liability (Count I), negligence (Count II), and Res Ipsa Loquitur (Count III). Avid moves to dismiss Count I pursuant to the Illinois Distributor Statute, 735 ILCS 5/2-621. Target has filed a Response opposing the dismissal, asserting that Indiana, not Illinois, substantive law should govern this case. For the reasons set forth below, the Court finds that Indiana law applies here; Avid's Motion to Dismiss is therefore denied.

## BACKGROUND

The following facts are taken from Taylor's Complaint and are assumed to be true for purposes of this Motion to Dismiss. *See Murphy v. Walker*, 51 F.3d 714, 717 (7th Cir. 1995). Target is a company that, through its agents and employees, owns, operates, and manages Target stores, including stores in the city of Chicago, Illinois. (Compl. ¶¶ 2-3.) Avid was, at the time of the incident at issue in this action, a manufacturer and importer of goods that were sold in Target stores, including those in Chicago. (Compl. ¶ 5.) Taylor alleges that both Avid and Target designed, manufactured, distributed, and sold Great Land Screened Gazebo Tents, including the tent at issue in this action (hereinafter "the Tent"). (Compl. ¶¶ 3, 6.)

On or before July 27, 2007, Taylor bought the Tent from a Target store in Chicago for use at the Indianapolis Speedway. (Compl. ¶ 7.) On July 27, 2007, at the Indianapolis Speedway, Taylor opened the Tent and began to assemble it according to its instructions and for its intended use. (Compl. ¶ 8.) During the course of assembly, Taylor suffered permanent and severe personal injuries. (Compl. ¶ 12.)

## STANDARD OF REVIEW

When considering a motion to dismiss under Rule 12(b)(6), the Court accepts as true all facts alleged in the complaint and construes all reasonable inferences in favor of the plaintiff. *See Murphy*, 51 F.3d at 717. To state a claim upon which relief can be granted, a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "Detailed factual allegations" are not required, but the plaintiff must allege facts that, when "accepted as true . . . 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). In analyzing whether a complaint has met this standard, the "reviewing court [must] draw on its judicial experience and common sense." *Iqbal*, 129 S. Ct. at 1950. When there are well-pleaded factual allegations, the Court assumes their veracity and then determines if they plausibly give rise to an entitlement to relief. *Id.*

## DISCUSSION

After Avid filed its Motion to Dismiss, relying upon Illinois law, Target filed a separate Response in which it argued that Indiana law should apply to this case. Avid then conceded in its Reply that Indiana law should govern. (*See* R. 62, Reply in Supp. of Def. Avid's Mot. to Dismiss Count I, at 5.) Although ordinarily "[l]itigants can, by stipulation, formal or informal, agree on the substantive law to be applied to their case," *City of Clinton, Ill. v. Moffitt*, 812 F.2d 341, 342 (7th Cir. 1987), here Taylor has not agreed that Indiana law should govern his claims. The Court must therefore decide which state's substantive law should be applied.

A choice of law analysis is required when the laws of two different states conflict such that the difference between the relevant laws will affect the outcome of the case. *Int'l Adm'rs, Inc. v. Life Ins. Co. of N. Am.*, 753 F.2d 1373, 1376 n.4 (7th Cir. 1985). Here, Illinois and Indiana apply different standards to the evaluation of product liability actions, and only Illinois recognizes joint and several liability for product liability actions. Because this case is brought under the Court's diversity jurisdiction, the Court applies Illinois choice of law principles in making the determination of which state's law applies. *See id.*

Illinois uses the "most significant relationship" approach to resolve choice of law issues. *See Esser v. McIntyre*, 661 N.E.2d 1138, 1141 (Ill. 1996). Generally, the law of the place where the injury in a tort action occurred controls, unless some other jurisdiction has a more significant relationship with the occurrence and with the parties. *See id.*; *see also Townsend v. Sears, Roebuck & Co.*, 879 N.E.2d 893, 903 (Ill. 2007). In applying this test, Illinois courts look to two particular sections of the Restatement (Second) of Conflicts of Laws ("the Restatement"), § 6 and § 145. *See, e.g.*, *Townsend*, 879 N.E.2d at 904.

### A. Section 145 Analysis

Under § 145 of the Restatement, four particular contacts are key to the choice-of-law analysis: "(1) where the injury occurred; (2) where the injury-causing conduct occurred; (3) the domicile of the parties; and (4) where the relationship of the parties is centered." *Esser*, 661 N.E.2d at 1141. The Court must evaluate and balance each in light of the particular facts and circumstances of this case in order to determine whether Illinois or Indiana has the more significant relationship to the litigation. *See, e.g.*, *Pittway Corp. v. Lockheed Aircraft Corp.*, 641 F.2d 524, 526-27 (7th. Cir. 1981). In a tort liability action, the two most important § 145 contacts are generally the location of the injury's occurrence and the location of the injury-causing conduct. *See, e.g.*, *Miller v. Long-Airdox Co.*, 914 F.2d 976, 978 (7th Cir. 1990).

There is no dispute that the injury at issue here occurred in Indiana. The question of where the injury-causing conduct occurred, however, is more complicated. Target claims that the injury-causing conduct was Taylor's assembly of the tent, which occurred in Indiana. (R. 59, Target's Resp. to Avid's Mot. to Dismiss ¶ 19.) However, Taylor's Complaint focuses on conduct that occurred prior to his assembly of the Tent—its design, manufacture, distribution, and sale —and does not make specific allegations as to where any of this conduct took place except for the sale, which occurred in Illinois. (*See* Compl. ¶ 7.) For the purposes of a choice-of-law determination in product liability litigation, the injury-causing conduct is often deemed to have occurred in the place where the product was designed or manufactured. *See, e.g., Ruiz v. Weiler & Co.*, 860 F. Supp. 602, 604 (N.D. Ill. 1994) (conduct leading to injury defined as "the allegedly defective design or manufacture" of the product at issue); *see also Green v. Goodyear Dunlop Tires N. Am.*, 2010 WL 747501, *6 (S.D. Ill. Mar. 2, 2010) (same); *Wreglesworth ex rel. Wreglesworth v. Arctco, Inc.*, 738 N.E.2d 964, 972 (Ill. App. Ct. 2000) (although injury occurred in Indiana, product was manufactured by a Minnesota corporation so "the place where the conduct causing the injury occurred . . . could only have been Minnesota").

Target is headquartered in Minnesota. Avid, according to the affidavit of its former owner, Lee W. Peakes, was a Kansas limited liability company. (*See* R. 50, Avid's Mot. to Dismiss, Ex. 2, Affidavit of Lee W. Peakes ¶ 5.) The affidavit further states that the Tent was "manufactured in China, packaged in China and shipped to the United States, direct to Avid's customers, including Target Corporation." (*Id.* ¶ 6.) It seems likely, therefore, that the Tent was not designed or manufactured in Illinois. *See Green*, 2010 WL 747501 at *6 (when the record is unclear as to where a defective product was designed and manufactured, court can rule out state where manufacture clearly did not occur). Thus, although the Tent was purchased in Illinois, the nature of this contact does not carry great weight in favor of an application of Illinois law because the more significant actions of design and manufacture did not occur in Illinois.

4

The next contact to be examined is the "domicil[e], residence . . . place of incorporation and place of business of the parties." *Restatement (Second) of Conflicts of Law* § 145(2). A national corporation is domiciled in the state wherein the corporation's headquarters are located, even if the corporation does business as a retailer in the state where the injury occurred. *See Townsend*, 879 N.E.2d at 906. A corporation's business operations in a state are contacts even if that state is not the location of the corporation's principal place of business; however, such contacts are insufficient to overcome the presumption that the law of the state where the injury occurred controls. *Miller*, 914 F.2d at 978-79.

Taylor does not name his state of domicile in his Complaint, but Target claims that he is a resident of Zion, Illinois. (*See* R. 1, Target's Mem. in Supp. of Notice of Removal to Fed. Court, at 2.) As stated above, Target is headquartered in Minnesota and Avid is a Kansas company; the companies are therefore domiciled in those states. Although Target operates stores in Illinois, that fact does not weigh heavily in favor of applying Illinois law to this case, as Target operates stores in every state in the United States except Vermont. *See* "All Target Locations," http://sites.target.com/site/en/spot/state_listing.jsp (last visited August 3, 2010). Thus, Taylor could presumably have bought the Tent at a Target store in any of forty-nine states. As for Avid, there are no allegations that Avid had any offices, employees, or substantial business contacts in Illinois, only that it shipped goods for sale to Target stores here and across the country. (Compl. ¶ 4.) In sum, therefore, there is no particular contact between Target and Illinois alleged by either of the parties that could not also be claimed of every other state except Vermont, except for the fact of Taylor's domicile here. This factor thus does not weigh in favor of an application of Illinois law.

The final § 145 factor is where the relationship between the parties, if there is any, is centered. In a product liability action, that relationship is centered in the state where the product at issue was purchased and used. *See Townsend*, 879 N.E.2d at 906. Where the allegedly defective product is purchased in one state but intentionally used in another, however, the relationship between

5

the injured party and alleged tortfeasor is centered in the state where the injury occurred. *See, e.g.*, *Green*, 2010 WL 747501 at *2 (relationship between tire manufacturer and accident victim arose in state where accident occurred, not state where tire was manufactured, installed, or serviced); *Ness v. Ford Motor Co.*, No. 89 C 689, 1993 WL 996164, at *3 (N.D. Ill. July 20, 1993) (Weisberg, M.J.) (Iowa law governed suit brought by Illinois residents for personal injuries arising out of an Iowa car accident). Thus, the nexus of Taylor's relationship with Target is located in Indiana.

As far as the relationship between Taylor and Avid is concerned, there is no relationship for purposes of a product liability case between a plaintiff and a distributor from whom the product was not directly purchased. *See Gregory v. Beazer East*, 892 N.E.2d 563, 583 (Ill. App. Ct. 2008). Therefore, Taylor has no relationship for choice-of-law purposes with Avid, as he did not buy the Tent directly from Avid. This, this factor favors applying Indiana law.

Balancing the totality of these contacts to see which state has the more significant relationship to the litigation under § 145, the place of injury factor favors Indiana, the location of the conduct causing the injury factor slightly favors Illinois insofar as the sale of the allegedly defective product took place in Illinios, the residence of the parties favors neither state, and the relationship between the parties slightly favors Indiana. Therefore, the minimal contacts that favor Illinois do not suffice to override the presumption that Indiana law should govern. *See Miller*, 914 F.2d at 978-79 (where totality of identified contacts did not "give Illinois a more significant relationship with the occurrence and the parties than Indiana has," Indiana law governed "absent some other exceptional circumstance").

## II.  Section Six Analysis

The § 145 "counting contacts" analysis is not by itself sufficient to determine which state has the most significant relationship to a case; rather, those contacts must be considered "in light of the general principles embodied in § 6." *Townsend*, 879 N.E.2d at 906. The Court must analyze whether the § 6 considerations overcome the conclusion reached after examining the § 145 contacts,

*Gregory*, 892 N.E.2d at 583, considering only those § 6 principles that are relevant to the case at hand. *See Esser*, 661 N.E.2d at 1142. In a choice-of-law question for a personal injury tort case, the most important § 6 factors are: "the relevant policies of the forum, . . . the relevant policies of the other interested state and the relative interests of that state in the determination of the particular issue, and . . . the basic policies underlying the particular field of law." *Gregory*, 892 N.E.2d at 583 (citing *Townsend*, 879 N.E.2d at 906-07). Section 6(2)(g), "ease in the determination and application of the law to be applied," can also be considered where relevant. *Restatement* § 145 cmt. b; *see Townsend*, 879 N.E.2d at 906.

To consider the relevant policies of the states involved, the Court must examine the relevant rules of both states. *See Restatement* § 145 cmt. c. Indiana's pure negligence rule protects defendants from being held liable for negligence that was not theirs; this is in keeping with the state's assessment of liability, which states that "a defendant is not liable for more than the amount of fault." Ind. Code Ann. § 34-20-7-1 Sec. 1. When a state has such a rule, the purpose of which is to deter and punish tortious conduct, "the state where the conduct took place may be the state of dominant interest." *Restatement* § 145 cmt. c. In contrast, Illinois holds multiple defendants jointly and severally liable for product liability actions, in order to best aid a plaintiff injured by an unreasonably dangerous defective product. 735 Ill. Comp. Stat. Ann. 5/2-1117; *Lamkin v. Towner*, 563 N.E.2d 449, 528-29 (Ill. 1990). When states have such a tort rule that focuses on compensating the victim, "the state where the injury occurred . . . may have the greater interest in the matter." *Restatement* § 145 cmt. c. Therefore, Illinois' rules would suggest that Indiana, as the place of injury, has the greater interest in the litigation, whereas Indiana's policy would suggest that the place where the underlying tortious conduct occurred, which here is not principally located in either of the states, would have the greater interest. Therefore, examination of the policies of the two states does not point in any clear direction. As the *Restatement* cautions that "[t]his factor must not be

7

over-emphasized," the policies of the relevant states do not weigh in favor of either party in this § 6 analysis. *Restatement* § 146 cmt. e.

Next, both states have interests in the outcome of this litigation. As the state where the accident causing the injury occurred, Indiana has an interest in applying its own product liability laws in order to deter and punish tortious conduct within its borders. *See Burlington N. & Santa Fe Ry. Co. v. ABC-NACO*, 906 N.E.2d 83, 93 (Ill. App. Ct. 2009); *Restatement* § 145 cmt. e. ("persons who cause injury in a state should not ordinarily escape liabilities imposed by the local law of that state on account of the injury"). Indiana also has an interest in compensating victims of accidents that occur within Indiana, an interest which Illinois courts have found to be "at least as strong as the interest of" a state in "protecting its residents." *Green*, 2010 WL 747501 at *7.

Illinois has several interests in this case as well, however. Most importantly, as the state where the effect of Taylor's injury is felt most acutely, Illinois has an interest in compensating its residents. *See Gregory*, 892 N.E.2d at 584; *Miller v. Hayes*, 600 N.E.2d 34, 38 (Ill. App. Ct. 1992). As the state where the sale of the Tent occurred, Illinois also has an interest in deterring negligent manufacture of goods sold within its borders. *Walters v. Maren Eng'g Corp.*, 617 N.E.2d 170, 174 (Ill. App. Ct. 1993) ("Illinois has an interest in seeing its substantive laws applied to resident corporations sued over conduct arising within Illinois"); *Restatement* § 145 cmt. c ("If the primary purpose of the tort rule involved is to deter or punish misconduct . . . the state where the conduct took place may be the state of dominant interest"). The sale of the Tent is only a fraction of the conduct at issue here, however, and thus Illinois' interest stemming from it cannot rightfully be described as the "dominant interest."

As also noted in the *Restatement*, if "the relevant local law rule of the state of conduct gave the defendant a special immunity, the interest of this state in having its rule applied would be clear." *Id.* § 146 cmt. e. As the Illinois Distributor Statute would allow the Defendants in this case immunity as "non-manufacturers," Illinois has an interest in having its law applied. 735 Ill. Comp.

Stat. Ann. 5/2-621. However, both of the Defendants are "non-manufacturers" who could potentially be dismissed from the case so long as they identify the Tent's manufacturer. *Id.* This would leave Taylor with only the Chinese manufacturer to sue, which would make the suit much more difficult to litigate than the one against the current Defendants. Allowing that to happen would prejudice Taylor and contradict Illinois' policy of ensuring that victims of injuries due to negligent product design and manufacture receive compensation. Therefore, since applying Illinois law would prejudice Taylor, applying Indiana law would be more in keeping with Illinois' general tort liability policies.

Finally, the Court can look to whether one state's law will facilitate easier determination and application of the law. Because Illinois' rule is a strict liability one, it would initially seem simple to apply to the case at hand. However, as noted above, if both of the current Defendants were dismissed pursuant to the Illinois Distributor Statute, the plaintiff could only proceed against the Chinese manufacturer, which would make administration of the case very difficult. Also, the Court would still need to determine whether each defendant was liable for 25% or more of the attributable fault, which is necessary in order for a defendant to be found liable under Illinois law. 735 ILCS 5/2-1117. Therefore, applying Illinois law as opposed to Indiana law would not result in a significantly easier determination.

Finally, both of the Defendants have agreed that Indiana law should apply. (R. 59, Target's Resp. to Avid's Mot. to Dismiss Count I; R. 62, Reply in Supp. of Avid's Mot. to Dismiss Count I.) No party has offered reasons why Illinois has a more significant relationship to the litigation than Indiana. Overall, therefore, the § 6 analysis favors the application of Indiana law.

## **CONCLUSION**

Applying Illinois choice-of-law rules, the Court finds that Illinois' contacts with the injury that is the subject of this litigation are not sufficient to overcome the presumption that the law of Indiana, as the place where the injury occurred, should govern. Because Indiana's substantive law

9

controls here, Avid's Motion to Dismiss Count I of the Complaint, which is grounded in Illinois law, is denied.

_____
Virginia M. Kendall
United States District Court Judge
Northern District of Illinois

Date: August 19, 2010